## FIRST NAT. BANK OF PITTSBURG v. GERARD et al.
### No. 4046.

Court of Civil Appeals of Texas. Texarkana.
June 4, 1931.

Briggs & Sanders, of Gilmer, for appellant.

C. E. Florence, of Gilmer, for appellees.

LEVY, J.

Mrs. Gerard sued G. C. Cox on a note, and to foreclose a chattel mortgage given to secure it. A foreclosure of the mortgage was sought against the First National Bank, and, in the alternative, a judgment for the value of the mortgaged property as for conversion. Certain of the property was sequestered by the plaintiff, and claimed under bond by the bank. The bank pleaded a superior and prior mortgage upon the property. G. C. Cox set up and proved by evidence his discharge in bankruptcy.

In a trial before the court, judgment was rendered in favor of the plaintiff against the bank for $350 as for conversion of the property mortgaged, and in favor of G. C. Cox because of discharge in bankruptcy. It was shown by the evidence that G. C. Cox executed a chattel mortgage of date July 11, 1927, to Edna Gerard for $385 and "all other advances made during 1927." The property covered by the chattel mortgage was a Ford touring car, an Espenschied wagon, two mules, and forty acres of cotton, and twenty acres of corn, and all rents of the land for 1927. A chattel mortgage was also executed by G. C. Cox to the bank of date January 27, 1927, for $500 and "all other indebtedness thereafter incurred." This mortgage included, besides other property, the same property described in Mrs. Gerard's mortgage. Both of these mortgages were duly registered. It appears that the bank in 1927 made advances to Mr. Cox to the amount of $817.50, which with the amount of the $500 note aggregated $1,317.50. Out of the proceeds of the crop of 1927, Mr. Cox paid the bank sums equalling $586.22. This payment was applied to the advances made during the year, leaving unpaid in December, 1927, $131.28 in addition to the original note of $500. Mr. Cox paid nothing in 1927 on the mortgage of Mrs. Gerard. In 1928, Mr. Cox made a new mortgage to the bank covering the unpaid indebtedness of 1927, and to secure new advances for the year 1928. He did the same in 1929.

In the spring of 1929, G. C. Cox, failing to pay the original note of $500 of 1927, turned over the mortgaged personalty to the bank. The mules, the Ford car, wagon, and certain cattle were valued at $595, and the note of Cox was credited by the bank in that sum. The original note and interest exceeded that amount. The property appears to have been fairly valued. There is no evidence that the bank's note was paid otherwise than by the above proceeds of the mortgaged property. The trial court made the findings, as recited in the judgment, that: "The payments made on the indebtedness to the First National Bank of Pittsburg released from said bank's mortgage the property described in the plaintiff's mortgage and the bank was not entitled to ownership and possession of said property at the time of the alleged conversion."

The turning question on appeal is, Was the court's finding sustained by the evidence? The inquiry involves the application of payments. Mr. Cox testified: "When I borrowed the money from the bank in 1927 I had an understanding with the bank that I would out of the proceeds of the crop first pay the amount of the new indebtedness before applying anything on the other indebtedness (the $500 note). At the end of the year 1927 I did not have enough money out of the proceeds of the crop to pay all of the new indebtedness. During 1928 and 1929 I also had an understanding with the bank to apply the proceeds of the crops, first to payment of the new indebtedness before applying anything on the old indebtedness (of $500 note). The payments made in each of the years of 1927, 1928, and 1929 were applied out of the crops to the new indebtedness according to the agreement between me and the bank."

The bank's evidence is in line with the evidence of Mr. Cox, and there is no conflict of evidence in the above matters of payments. Therefore, according to the proof, the money paid by G. C. Cox to the bank was for the advances, above the $500 note of January, 1927, made in 1927, 1928, and 1929 out of the proceeds of the crops grown. The bank had the prior lien on the crops of 1927, and was entitled to the proceeds thereof first for advances of that year. The bank was also entitled to all the proceeds of the crops of 1928 and 1929 for advances of those years, for Mrs. Gerard had no claim therein, as she had no mortgage covering the crops of 1928 or 1929. In such facts, the bank had the right to appropriate all of the payments out of the proceeds of the several crops as done, and Mrs. Gerard could not compel a different appropriation from that agreed upon between the bank and Mr. Cox. 48 C. J. § 123, p. 663.

As the record here reflects, Mrs. Gerard's rights as against the bank depended solely upon whether or not the specific property turned over to the bank in 1929, and upon which Mrs. Gerard also held a mortgage, was of a fair and reasonable value above the $500 note and interest thereon, held by the bank. Mrs. Gerard would be entitled to the surplus above the $500 and interest thereon as a junior mortgage. The bank's unpaid balances for advances in 1928 and 1929 could not be paid out of this specific property in precedence of Mrs. Gerard's note, because the bank's mortgages of 1928 and 1929 would be subject to Mrs. Gerard's debt, except as to the bank's note of 1927.

The judgment is reversed, and the cause is remanded.